ADAMS et al. v. KINZER & JONES MANUF'G CO.

(Circuit Court of Appeals, Third Circuit. December 2, 1896.)

PATENTS—MOLDS FOR CASTING TUBULAR ARTICLES.

The Adams patent, No. 465,771, for an improvement in molds for casting tubular articles, and consisting in the use of a runner extending through the sand into which the metal is poured, so that it wells up into the mold from below, does not cover the device shown in Fig. 3 of the drawings, which is designed for articles in which the pattern is straight, or tapers towards the lower end, and can be wholly withdrawn from the upper end. Adams was not the inventor thereof, nor was the invention disclosed in Fig. 2 of so broad a character as to include the device of Fig. 3.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

This was a suit in equity by Stephen Jarvis Adams and S. Jarvis Adams & Co. against the Kinzer & Jones Manufacturing Company for alleged infringement of a patent for an improvement in molds for casting tubular articles. The circuit court dismissed the bill on the ground of noninfringement, and the complainants have appealed.

The following opinion was delivered below, on January 11, 1895, by

BUFFINGTON, District Judge: On December 21, 1891, letters patent No. 465,771, issued to S. J. Adams for an improvement in molds for tubular articles. The present bill is filed by complainants, the owners of that patent, against the Kinzer & Jones Manufacturing Company for alleged infringement of its single claim, which is as follows:

"A mold for tubular articles, having a matrix, a core entering the matrix from above and closing the upper end thereof, a runner extending entirely through the mold, and a gate connecting the base of the runner and the base of the matrix, these parts being contained and supported within a single flask, in combination with a level sand bed, supporting the mold, and closing the base of the runner."

The latter company justify their making and using the alleged infringing device under letters patent No. 410,285, issued to Jacob Kinzer September 3, 1889. The alleged infringing device is in fact the one shown by said patent. Being prior in date to Adam's patent, Kinzer's forms a complete answer to the bill; but, to avoid the effect of this prior patent, Adams avers that he invented the device in question prior to Kinzer. The subject-matter of the two patents is a device for casting axle boxes and other tubular articles. Prior thereto, in casting axle boxes, molten metal was poured through a sprue at the top of the matrix. Unless the matrix walls and core sides were hard and firm, the pouring of the metal was liable to cut them. This made the casting faulty, either by reason of rough surfaces, or by flaws caused by the presence in it of the cut sand. On the other hand, in attempting to get a solidity capable of withstanding this cutting process, the cores and walls were liable to be made so dense as to cause scabs on the castings. So far as axle-box castings are concerned, these difficulties, with others that need not be set forth, were overcome by the devices shown in the two patents. This was done by pouring the molten metal through a runner ex-

tending to the bottom of the matrix, and through the entire body of the sand, thus causing the metal to well up from below, and without any cutting action, when the mold was placed in combination with a level, supporting sand bed, which closed the base of the runner. By these devices, also, two-part flasks were dispensed with in this character of castings. But while this method of the metal entering from

below was new as applied to axle-box castings, it had been previously applied to several other kinds of castings. Since 1866 it had been used in a two-part flask in the castings of bushings and plungers for steamboat pumps; since 1885, in guide-point molds; and at least since August, 1887, in pipe-ball molds, in which a side runner reached three-fourth way to the bottom of the matrix. Kinzer's application was filed March 5, 1889, and the patent issued September 3d, follow-

ing. It showed a pouring runner extending through the flask, and entering a gate provided with arms, by means of which, when placed on the casting floor, the metal entered the matrix from below. The core was seated in core seats at either end, formed in the sand itself, and the whole was formed in the single body of sand, by which the use of two-part flasks was avoided. Adams' application was filed September 30, 1889. Fig. 2 thereof shows what is known as a "Kentucky axle-box mold." In it a pattern was used which is larger at each end than in the middle, and is consequently in two parts, one of which is withdrawn from each end. Ring or cup cores, designated in the patent as "auxiliary cores," are seated in seats or prints at the base of the matrix, and in these the principal or central cores are centered. Fig. 3 is intended for casting tubular articles, where the pattern is straight, or tapers towards the lower end. It can therefore be wholly withdrawn from the upper end. The matrix being wholly closed at the lower end by the sand of the mold, no auxiliary cores are or can be used, and the central core is centered at the base in core prints, molded by the prints on the patterns themselves.

An interference, which was limited to the device shown by Fig. 3 of Adams' patent, was granted between Kinzer and Adams, and resulted in the final decision by the commissioner that Adams was the prior inventor of device No. 2, and Kinzer of No. 3. While the commissioner subsequently modified his opinion to the extent of rescinding his direction to the primary examiner to erase Fig. 3 from Adams' application, yet there was no change or modification of the finding that Kinzer was the prior inventor of the device shown by Fig. 3 of the Adams application. Irrespective of the weight to be given such findings, as noted in Morgan v. Daniels, 153 U. S. 125, 14 Sup. Ct. 772, and upon a careful, independent examination of the testimony bearing on that point, which is much fuller than that taken in the patent office, we have reached the same conclusion which was there arrived at, and are of opinion that Adams has not shown that, as to Kinzer, he was the prior inventor of the device shown in Fig. 3, or, indeed, that he (Adams) invented it at any time. The evidence shows that in November, 1877, Mr. Adams had in operation, in his firm's foundry, his Kentucky axle-box mold, which is shown in Fig. 2 of his application. In August or September, 1887, pipe balls were being cast in the foundry in a mold where the core was seated at the base, in the body of the sand. A runner extended down about three-fourths through the body of the sand, turned at right angles, and entered the matrix at the bend of the ball. In December, 1887, one Elliott, the molder in charge of this pipe-ball casting, having seen the process of pouring the Kentucky axle-box mold, in which the metal entered at the base of the matrix, conceived the idea of applying the same method of pouring to the pipe-ball molds, or, in other words, of extending the runner the remaining quarter of the way through the entire body of the sand; cutting the gate at right angles from the runner to the matrix, and placing the flask on a casting floor, so the latter would close the gate. If this constituted invention, such invention was not Mr. Adams' work. There is nothing to

connect him with the original conception, or its reduction to practice, except the fact that it was done in the foundry of the firm of which he was a member, and by one of the firm's employés. Indeed, in the testimony he has not personally claimed it as his own. As between Adams and Kinzer, there can be no question that Adams has not shown that he was the prior inventor of the device shown in Fig. 3. Whether the testimony on the part of the respondents is sufficient to establish an invention of this device at a time earlier than Elliott, we do not deem it necessary to now decide. For present purposes, it is sufficient to say that, so far as Mr. Adams is concerned, he has not shown that the device shown in Fig. 3 was invented by him at any time; and this, of course, is an end of the case, unless the invention disclosed in Fig. 2, of which he was confessedly the inventor, was of such a primary character as to include the device shown in Fig. 3. We do not regard it as of that character. While it may have been a step in advance in the molder's art, it was not such a stride as made it a pioneer. The field was by no means a new one. In the prior art was found the guide-point mold, where a runner extended through the entire body of the sand, and in combination with this a level sand bed, supporting the mold and closing the base of the runner. In defendant's Exhibit A we have a two-part flask in use for 25 years before the present patent issued, in which a runner extends through the cope, and reaches the matrix at its base, thus allowing the metal to enter from below. In the Rider patent of 1875 the matrix is formed in one body of sand, and the core is centered in the body of the sand itself. However broad this claim may seem to be, in view of the prior state of the art; of the finding by the patent authorities that Mr. Adams was not the prior inventor of device No. 3,—a finding in which we concur,—we are of opinion that the claim must not be construed to cover a device such as the alleged infringing one, where the core is seated at the base of the matrix, in the body of the sand itself, and no separate, auxiliary ring or cup cores are employed. Such being our conclusion, we hold the defense of noninfringement is established, and the bill should be dismissed.

ACHESON, Circuit Judge, concurs.

James I. Kay, for appellants.
J. Snowden Bell and George H. Christy, for appellee.

Before DALLAS, Circuit Judge, and BUTLER and WALES, District Judges.

PER CURIAM. The unusual delay which has occurred in the disposition of this case has not been occasioned by the existence of any doubt in the mind of either of us upon any question which it presents. The decision now to be announced was reached soon after the argument, and it has been supposed that it had been long since promulgated. Our attention is now called to the fact that this

was not done, and we are unwilling that the omission should continue to await the preparation of any statement of the grounds of our conclusion. It is sufficient to say that the opinion filed in the circuit court is quite adequate, and is concurred in by all of us. Therefore, upon that opinion, the decree is affirmed.